Daniel Weinberg, Bar No. 227159
daniel.weinberg@lathropgpm.com
Marissa Nebenzahl Sinha, Bar No. 251398
marissa.sinha@lathropgpm.com
LATHROP GPM LLP
555 Twin Dolphin Drive, Suite 200
Redwood City, CA 94065

*mailing address:*
P.O. Box 1469
San Jose, CA  95109-1469
Telephone:    408.286.9800
Facsimile:    408.998.4790

Attorneys for Plaintiff
ENTERPRISE EVENTS GROUP, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTERPRISE EVENTS GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE HANOVER INSURANCE GROUP, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 26-3169<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT; AND**<br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**[JURY TRIAL DEMANDED]**<br>  **(Fed. R. Civ. P. 38(b))** |

Plaintiff ENTERPRISE EVENTS GROUP, INC., by and through its attorneys, complains of defendants THE HANOVER INSURANCE GROUP, INC. and DOES 1 through 50 as follows:

## THE PARTIES

1.    Plaintiff ENTERPRISE EVENTS GROUP, INC. ("Enterprise") is a California corporation with its principal place of business at 950 Northgate Drive, Suite 100, San Rafael, Marin County, California.

2.    Defendant THE HANOVER INSURANCE GROUP, INC. ("The Hanover") is a Delaware corporation with its principal place of business at 440 Lincoln Street, Worcester,

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

COMPLAINT

Massachusetts.

3.    Enterprise is informed and believes and thereon alleges that The Hanover, at all times mentioned herein, was and is an insurance provider issuing policies to insureds residing in, or doing business throughout, the State of California. At all relevant times, The Hanover transacted insurance business in the State of California and the County of Marin.

4.    The Hanover issued the insurance policy to Enterprise forming the basis of this lawsuit.

5.    Enterprise is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these defendants by such fictitious names. Enterprise will amend this complaint to allege their true names and capacities when they are ascertained. Enterprise is informed and believes, and thereon alleges, that each of the said fictitiously named defendants is responsible in some manner for the occurrences herein alleged, or upon the policy of insurance hereinafter alleged, and that Enterprise's damages as herein alleged were proximately caused by their conduct and/or any of them, and/or each of them.

6.    Enterprise is informed and believes and thereon alleges that at all times herein mentioned, DOES 1 through 50, each of them, were acting as the agents, servants, successors, predecessors, principals, joint venturers, and employees, and were acting within the full course and scope of said relationships, and with the full knowledge, consent and ratification, either express or implied, of The Hanover.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred in Marin County. The Hanover issued the relevant insurance policy to Enterprise within the county, and the amounts incurred by Enterprise for which the policy benefits are sought were incurred within the county.

**GENERAL ALLEGATIONS**

9.    Enterprise and The Hanover entered into a written contract of insurance.

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

- 2 -                                                        COMPLAINT

Specifically, at all times herein mentioned, Enterprise was the named insured under The Hanover Cyber Advantage Pro insurance policy number LHF M053867 00, effective June 1, 2025 to June 1, 2026, which was in place and in full force and effect during the time the claim was timely submitted to The Hanover (the "Policy"). The Policy was intended to provide coverage for, among other things: (1) Security Breach Notification and Remediation; (2) Systems and Data Restoration; and (3) Cyber Extortion Expenses, including ransom payments, incurred to prevent or mitigate a cyber extortion threat.

10.     During the Policy period, Enterprise suffered a ransomware attack requiring payment of ransom to restore encrypted data. Enterprise complied with all Policy conditions, including premium payments, timely notice, and proof of loss.

11.     The Hanover denied coverage to Enterprise based on responses provided to an insurance application questionnaire submitted to The Hanover.

12.     The Hanover does not—and cannot—contest that the claim and coverage sought are covered by the Policy's insuring agreements and coverage grants.

13.     The Hanover attempts to weaponize Enterprise's insurance application questionnaire responses to avoid coverage obligations under the Policy.

14.     The Hanover insurance application questions, requiring simple checkmark answers, contain no defined terms, including, but not limited to, the terms "back-ups" and "critical data and computer systems."

15.     Enterprise's responses to each question was accurate and truthful. Had The Hanover intended the terminology in the questionnaire to have certain specific meanings, it could have provided clear definitions. The Hanover's application questionnaire contained no definitions of any terms.

16.     Enterprise reasonably expected insurance coverage under the Policy for the claim forming the basis of this lawsuit. The Hanover Cyber Capabilities Brochure, provided to Enterprise before its purchase of the Policy, includes an example of coverage provided for a manufacturing firm that suffers a ransomware attack where its computers are taken over and data is encrypted, and a $100,000 extortion demand is made to restore access to the data, or risk losing access to

proprietary information. The Hanover advertised that coverage would be provided for bringing in a forensic information technology specialist to obtain proof the data could and would be restored if the ransom was paid, and negotiated down the cost of paying the ransom. The Hanover specifically stated that "The Hanover can help" in this situation because "Our cyber extortion protection covers extortion and associated expenses, such as forensic investigations." The Hanover failed to provide coverage to Enterprise under nearly identical circumstances based on an unreasonable and incorrect assessment of the accuracy and truthfulness of Enterprise's answers to the application questionnaire.

17.    Enterprise seeks damages for breach of insurance contract and for breach of the implied covenant of good faith and fair dealing due to, *inter alia*, The Hanover's failure to timely pay policy benefits, unreasonable claims handling, wrongful coverage denial, and failure to pay all benefits owed under the Policy.

## THE POLICY

18.    The claims-made Policy issued on June 1, 2025 for an effective period of June 1, 2025 through June 1, 2026.

19.    At all relevant times to this action, the Policy was in full force and effect, and Enterprise fully complied with all terms and conditions of the Policy, including timely reporting the claim at issue, and the payment of all premiums owed in consideration for insurance coverage provided by the Policy.

20.    The Policy provides several "coverage parts," including first and third-party insurance coverages. With respect to the former, the Policy provided Enterprise with Coverage Section 1.B. First Party Coverage – Breach Response Costs including, among other coverages: (1) Systems Restoration Expense; (2) Cyber Extortion; and (3) Cyber Breach or Extortion Reward, including ransom payments, incurred to prevent or mitigate a Cyber Extortion Threat (including to disseminate data).

21.    The Policy also provided Enterprise with Coverage Section 1.D. First Party Coverage – Loss of Income including, among other coverages: (1) Business Income Loss and Extra Expense; (2) Contingent Business Income Loss and Extra Expense; and (3) Reputational Harm

Expense.

22.    The Policy also provided Enterprise with Endorsement 3. Systems Deficiency Remediation Coverage, in consideration for an additional premium charged.

23.    An overview of the relevant coverages afforded under the Policy follows:

**Coverage Section 1.B. First Party Coverage—Breach Responses Costs**

\* \* \*

**2. Systems Restoration Expense**

We will reimburse, or pay on Your behalf, Your Systems Restoration Expense directly resulting from a Malicious Attack that first occurs during the Policy Period, and an Authorized Person first discovers during the Policy Period, and first reports to Us during the Policy Period, or within ninety (90) days after the end of the Policy Period.

**3. Cyber Extortion**

We will reimburse, or pay on Your behalf, Your Cyber Extortion Expense directly resulting from a Malicious Attack that first occurs during the Policy Period, and an Authorized Person first discovers during the Policy Period, or within ninety (90) days after the end of the Policy Period.

**5. Cyber Breach or Extortion Reward**

We will reimburse, or pay on Your behalf, Your Cyber Breach or Extortion Reward Expense directly resulting from an Information Security Breach or Cyber Extortion Threat that first occurs during the Policy Period, and an Authorized Person first discovers during the Policy Period and first reports to Us during the Policy Period, or within ninety (90) days after the end of the Policy Period.

\* \* \*

**II. DEFINITIONS**

Application means:

A. any portion of an application given to Us for Your Policy including any attachments, written information and materials provided to Us by or on behalf of You for the purposes of Our underwriting this Policy; and

B. any warranty provided to Us within the past three (3) years in connection with any coverage part or policy of which this Policy is a renewal or replacement.

Authorized Person means:

If the Named Insured is designated in the Declarations as:

* * *

C. an organization other than a partnership, joint venture or Limited Liability Company, then any Named Insured's director, executive officer or Chief Information Officer or any leader of the Named Insured's legal, finance, risk management or other department that is responsible for insurance matters, or the organizational or functional equivalent of such positions.

* * *

Computer System means:

any computer or computer network including Hardware, software, telephone system, firmware, and the Data stored thereon, as well as associated input and output devices, data storage devices, networking equipment and storage area network or other Data backup facilities. Computer System also means Hardware that is owned by, licensed to, or leased to an Employee, while authorized by, and transacting business on behalf of, the Named Insured, except under the Insuring Agreements I.B.2. Systems Restoration Expense, I.B.6., Hardware Replacement Expense, I.C.2. Computer Fraud, and I.C.3. Systems Resource Fraud.

* * *

Cyber Extortion Expense means

any reasonable and necessary expense incurred by You with Our prior written approval including any Cyber Extortion Payment that has been made under duress by You or on Your behalf, but solely to prevent or mitigate a Cyber Extortion Threat or ransomware attack; and any other expenses directly relating to Your efforts to prevent or mitigate a Cyber Extortion Threat or ransomware attack.

Cyber Extortion Payment means

Money or Other Property demanded to mitigate or terminate a Cyber Extortion Threat.

Cyber Extortion Threat means a threat to:

A. access, alter, corrupt, damage, misappropriate, destroy, delete, sell or disclose Confidential Business Information, Personal Information or software on Your Computer System;

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

- 6 -                                                COMPLAINT

B. initiate a denial of service attack on Your Computer System; or

C. transmit a virus or harmful code into Your Computer System;
    provided that such Cyber Extortion Threat is made for the purpose of demanding a Cyber Extortion Payment.

\* \* \*

Malicious Attack means:

A. the introduction of a computer virus or harmful code into Your Computer System; or

B. damage to, destruction of, or deletion of Data or software within Your Computer System by a person who is not authorized to access Your Computer System, or is authorized to access Your Computer System but uses such access to cause damage, destruction or deletion.

**Endorsement Number: 3 SYSTEMS DEFICIENCY REMEDIATION COVERAGE**

\* \* \*

In consideration of the premium charged it is agreed that:

C. Section 1.B. First Party Coverage – Breach of Response Costs is amended to

include:

<u>System Deficiency Remediation</u>

We will reimburse, or pay on Your behalf, Your Systems Deficiency Remediation Expense that directly results in Cyber Breach Expense:

Systems Deficiency Remediation Expense means the reasonable cost or expense, pre-approved in writing by Us, to supplement,, upgrade, or otherwise improve the security of Your Computer System to prevent an Information Security Breach as recommended by a provider who has conducted an investigation or forensic analysis of Your Computer System following an Information Security Breach.

\* \* \*

## <u>THE CYBER ATTACK AND THE HANOVER'S INSURANCE CLAIM DENIAL</u>

24.    Enterprise is a leading event production company specializing in designing,

planning, and executing high-impact corporate events, galas, conferences, and experiential marketing programs for clients worldwide.

25.    Beyond its commercial endeavors, Enterprise maintains a strong commitment to community impact through structured philanthropic initiatives, including annual Toys for Tots drives collecting new toys for children in need, employee volunteer time supporting the SF-Marin Food Bank, and participation in environmental programs like Ecodrive's Clean Ocean Cohort to fund ocean plastic removal.

26.    On or about August 26, 2025, Enterprise became aware that it was a victim of a cyber extortion attack (the "Incident") when it noticed encrypted files on several of its computer systems. Enterprise took immediate steps to mitigate the event, including disconnecting its VPN, severing internet connections, and running anti-malware programs.

27.    On August 27, 2025, Enterprise timely notified The Hanover of the Incident through its broker for insurance coverage under the Policy. The Hanover then referred Enterprise to Constangy Brooks, Smith & Prophete, LLP ("Constangy") for legal assistance who in turn engaged Kivu Consulting ("Kivu") for a forensic investigation.

28.    Kivu ultimately authored a December 3, 2025 Final Report and Breach Risk Assessment detailing the Incident and its findings, including that it was unable to determine the root point of compromise due to the threat actor's extensive log clearing.

29.    On or about August 27, 2025, The Hanover acknowledged the claim, and the very next day emailed Enterprise purporting to "clarify" whether Enterprise actually had "back-ups" that could be used to restore files that had been encrypted by the threat actor.

30.    On or about August 28, 2025, Enterprise, at The Hanover's direction, initiated communications with the threat actor for the purpose of understanding the scope of the system infiltration and to understand the threat actor's demands. As a result of these communications, Enterprise learned that the threat actor encrypted data from Enterprise's system, that potentially included personally identifiable information and business sensitive information.

31.    On or about September 2, 2025, The Hanover's adjuster again emailed Enterprise to purportedly determine whether it performed "back-ups" on its data, in response to which Enterprise

advised that its data was maintained on Synology NAS, and which automatically "backed-up" to box.com. Enterprise further advised, however, that since the encrypted files uploaded to box.com as part of this process had been given new names by the threat actor, the original "back-ups" were not affected, and could not be used to restore the encrypted data.

32.     Thereafter, on September 3, 2025, The Hanover promptly turned around and emailed Enterprise a purported "reservation of rights" based on "potential coverage issues" related to "statements made in the…New Business Application." The Hanover did not, however, deign to disclose which "statements" it was referring to.

33.     On or around September 15, 2025, after a series of negotiations and under duress, Enterprise agreed to pay a cyber extortion payment of $102,700.00 to the threat actor in order to receive a decryption key permitting Enterprise to access its encrypted files. The December 3, 2025 Kivu report refers to the necessity to negotiate for a decryption key as being due to a lack of "viable" backups which, as Enterprise had already explained to The Hanover back on September 2, 2025, was because the threat actor had renamed and encrypted the files before they were "backed-up" to box.com.

34.     On September 16, 2025, with the assistance of Kivu, Enterprise paid the cyber extortion payment of $102,700.00. Enterprise confirmed that the decryption key received successfully decrypted the previously encrypted files.

35.     On December 19, 2025, Enterprise received a letter from The Hanover's outside counsel that denied coverage under the Policy, erroneously asserting that Enterprise "had no data back-up" since The Hanover did not consider Enterprise's methodology to be acceptable "back-up" for purposes of affording coverage, notwithstanding the fact that The Hanover never disclosed to Enterprise that it only considered certain "back-up" methods acceptable, and never asked Enterprise its specific "back-up" method in its New Business Application.[1]

36.     The only basis for The Hanover's denial is a series of questions on the New Business Application preceding the inception of the Policy. The Hanover wrongly asserts that a technical

---

[1] The referenced Policy, Hanover Cyber Capabilities Brochure, and New Business Application are not attached as these documents are in Hanover's possession, and their existence is undisputed.

LATHROP GPM LLP
ATTORNEYS AT LAW

investigation confirmed that several application question responses were not accurate concerning Enterprise's information "back-up" protocols. That is incorrect.

37. The Hanover further alleges that the Policy would not have been issued if The Hanover had received different answers; however, The Hanover did receive accurate information.

38. The New Business Application questions and responses The Hanover relies on for its denial include the following:

**2. Back-Ups:** *(Select One):*

a. The Applicant makes full and incremental back-ups of critical data and computer systems.

☒ Daily ☐ Weekly ☐ Monthly ☐ Quarterly ☐ Less than Quarterly

☐ No Back-Ups

b. If back-ups are performed is one stored on-line? ☒ Yes ☐ No

c. If back-ups are performed is one copy stored off-site and off-line? ☐ Yes ☐ No

d. If back-ups are performed how quickly could systems be operational?

☒ Within 24 hours ☐ Within 25-48 hours ☐ Within 49-130 hours

☐ Greater than 130 hours

e. Are any of the Applicant's back-up solutions immutable, i.e. data that is stored in a format that can never be tampered with, modified, or deleted? ☒ Yes ☐ No

39. The Hanover's coverage denial is inaccurate, inappropriate, and fails. Among other things, Enterprise maintained daily "back-ups" for its data and computer systems, including deploying a dedicated data storage appliance connected by Enterprise's computer network. Enterprise's storage functioned as a centralized storage repository, which was backed-up using a cloud storage vendor.

40. The Hanover does not assert—and cannot assert—that Enterprise' claim does not qualify as a Cyber Extortion Threat for which Enterprise was forced to make a Cyber Extortion Payment as those terms are contemplated by the Policy's insuring agreement and coverage grants. In fact, Enterprise would not have even made the ransom payment had the threat actor not threatened to disseminate data on the dark web.

41. Importantly, the Policy does not contain any exclusions whatsoever to the First-Party Coverage Sections 1.B. or 1.D. related to the existence, manner, or scope of "critical data

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

COMPLAINT

back-up." In fact, Enterprise's situation is the exact scenario outlined in The Hanover's Cyber Capabilities Brochure – specifically, that The Hanover's Cyber Extortion Protection would cover the costs of paying a ransom to recover data encrypted during a ransomware attack.

42.    Enterprise's system architecture utilized reputable storage and cloud storage vendors, creating an offsite, online backup solution. The cloud backup provided geographically separated data replication, ensuring critical files remained accessible even if the primary network storage appliance experienced ransomware encryption or hardware failure. The combination of NAS (local, network-accessible centralized storage) and a reputable cloud vendor (remote, online backup) directly responded to The Hanover's application questions confirming daily backups, online storage, and 24-hour recovery capability, establishing Enterprise's truthful compliance with represented backup practices rather than the "no backup" fiction asserted in The Hanover's denial.

43.    If The Hanover wanted to institute a specific, technical requirement for what it considered acceptable "back-up" of "critical data and computer systems" for purposes of affording coverage, it could have avoided the ambiguity by specifying requirements in the New Business Application and Policy. A reasonable insured would conclude, as Enterprise did conclude, that its network storage with access controls and cloud replication appropriately allowed it to make its responses.

44.    Enterprise's responses to the New Business Application questions were accurate, and based on reasonable interpretations of otherwise undefined terms. Further, Enterprise specifically paid an additional premium for Endorsement Number 3: Systems Deficiency Remediation Coverage, in the event a situation like the Incident described herein occurred.

45.    The Hanover has improperly and unreasonably recharacterized its own application questions and Enterprise's responses thereto to avoid its obligations under the Policy,.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

46.    Enterprise incorporates herein by reference the allegations contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. For valuable consideration, The Hanover issued and delivered to Enterpirse the Policy forming the basis of this lawsuit.

48. Enterprise, at all times herein mentioned, performed all of the terms and conditions of the Policy including, but not limited to, paying premiums to The Hanover to maintain the Policy in force with the understanding that it provided coverage, including, but not limited to, coverage for Cyber Extortion Payments.

49. Enterprise complied with all obligations under the Policy and California law. Enterprise intended and expected to be assured of the peace of mind and financial security of having insurance in the event of a Cyber Extortion Event, among other coverages provided by the Policy.

50. The Hanover breached the terms of the Policy by failing to make full payments of all amounts due, failing to make payments in a timely manner, failing to explain to its insured the basis for The Hanover's decision-making process, failing to investigate, and the other conduct referenced in paragraphs 1 through 47 of this Complaint.

51. The Hanover breached the Policy by the following acts:

(a) Failing and refusing to make a reasonable, prompt and adequate investigation of Enterprise's claim;

(b) Handling the claim in an unfair manner;

(c) Failing to acknowledge and act reasonably and promptly upon communications from Enterprise with respect to claims arising under the Policy;

(d) Failing and refusing to adopt, implement, or follow reasonable standards for the reasonable and adequate investigation and processing of claims arising under the Policy;

(e) Failing to provide promptly a reasonable explanation to Enterprise of the basis relied on in the Policy, in relation to the facts or applicable law, for failing to confirm coverage or pay Enterprise's claim;

(f) Failing and refusing to consider Enterprise's interests equal to The Hanover's own interests;

(g) Resolving ambiguities in the Policy and communications in The Hanover's favor to avoid providing Policy benefits;

(h) Requiring Enterprise to file an action to obtain benefits under the Policy to which Enterprise was always entitled;

(i) Requiring Enterprise to retain and pay for attorneys, and other experts in an effort to obtain the benefits due under the Policy;

(j) Making, issuing, circulating and disseminating before the public in this state, certain false and misleading statements, assertions, and representations about its policies and coverage, which The Hanover knew, or in the exercise of reasonable care, should have known, were untrue and/or misleading;

(k) Misrepresenting to Enterprise pertinent facts, law and/or policy provisions in connection with the wrongful denial of coverage; and

(l) By the above and other conduct, violating the California Insurance Code and regulations issued by the California Department of Insurance.

52.    As a direct and proximate result of The Hanover's conduct, acts, errors and omissions as herein alleged, and its breaches of the Policy, Enterprise has been damaged in an amount according to proof at trial for the damages as prayed for herein including, but not limited to, the following payments:

53.    Enterprise has already paid approximately $390,000.00[2] for expenses directly tied the Incident, including the following:

a.   The ransom payment;

b.   Kivu consulting fees;

c.   Constangy fees;

d.   IT consulting fees; and

e.   Attorneys' fees to address The Hanover's wrongful denial.

54.    Enterprise is entitled to recover all damages proximately caused by The Hanover's breaches.

---

[2] Enterprise reserves the right to supplement these amounts.

82371188v5

COMPLAINT

LATHROP GPM LLP
ATTORNEYS AT LAW

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

55.      Enterprise incorporates herein by reference the allegations contained in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

56.      Implied in the Policy is a covenant that requires The Hanover to act in good faith and to deal fairly with Enterprise. Among other things, this covenant requires The Hanover to conduct timely and reasonable investigations of all claims, to respond in a timely, specific, and reasonable fashion to all requests by Enterprise for information, to respond in a timely, specific, and reasonable fashion to all requests for coverage determinations, to refrain from placing its interests ahead of Enterprises' interests when evaluating coverage issues by making unreasonable coverage arguments or taking unreasonable coverage positions, to refrain from taking unreasonable or pretextual coverage positions, and to avoid all actions that would deny Enterprise the benefits of the policy. The Hanover also agreed, and was required by law, to resolve all doubts about coverage in Enterprises' favor.

57.      Notwithstanding its obligation to act in good faith and to deal fairly with Enterprise, The Hanover failed and refused to act in good faith and to deal fairly with Enterprise and otherwise breached the implied covenant of good faith and fair dealing, as set forth more particularly herein.

58.      As a direct and proximate result of The Hanover's conduct, acts, errors and omissions in violation of its obligation of good faith and fair dealing as alleged herein, Enterprise has been deprived of the coverage to which it is entitled to under the Policy, has incurred attorneys' fees and expenses, expert fees and expenses, and other damages to obtain the benefits to which it was always entitled, and has sustained damages such as other economic losses and special and general damages in amounts not fully ascertained.

59.      The Hanover acted with malice, fraud, and oppression in connection with the conduct alleged in this cause of action, which paragraphs are expressly incorporated herein by reference. In particular, The Hanover acted with reckless disregard of the likelihood of causing Enterprise financial distress, and acted in conscious disregard of Enterprise's rights, and acted to

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

- 14 -                                                    COMPLAINT

further The Hanover's own economic interests to Enterprise's prejudice. The Hanover's wrongful disclaimer of its coverage obligations was made with the intent to intimidate and harass Enterprise and to discourage Enterprise from pursuing its rights under the Policy.

60. The Hanover further acted with malice, fraud and oppression in that it advertised a scenario that Cyber Extortion Protection would cover when, in fact, The Hanover never intended to provide coverage under a scenario such as the Incident, conducted a purported "investigation" with the intention all along that it would ultimately disclaim coverage by alleging Enterprise did not "back-up" "critical data and computer systems," an alleged scenario based on terms defined neither in the Policy nor New Business Application, nor included as Policy exclusions, failed to pay Enterprise's claim even when presented with evidence to support its application responses, the facts, and California law, all of which were designed to deter, confuse, vex, harass and annoy Enterprise and to further discourage Enterprise from pursuing its rights. Upon information and belief, all of The Hanover's conduct was conducted by or ratified by management.

61. In order to deter such bad faith conduct in the future as alleged herein, and to prevent repetition thereof as a practice, by way of punishment and as example, Enterprise prays that, pursuant to California Civil Code § 3294, punitive damages be awarded in an amount according to proof at trial

## **PRAYER FOR RELIEF**

WHEREFORE, Enterprise prays for judgment against Defendant as follows:

1. For general and special damages according to proof;

2. For prejudgment interest on said damages at the legal rate, according to proof;

3. For attorneys' fees, expenses, and costs and other expenses, fees, and costs incurred to obtain the benefits to which Enterprise was entitled to under the Policy in an amount according to proof;

4. Emotional distress damages;

5. For punitive or exemplary damages according to proof; and

6. For such other and further relief as the Court may deem just and proper.

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

- 15 -                                                        COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury as to all matters on which a jury is permitted under applicable law.

Dated:  April 14, 2026                                    LATHROP GPM LLP


By:  */s/ Marissa Nebenzahl Sinha*
Daniel Weinberg
Marissa Nebenzahl Sinha
Attorneys for Plaintiff
ENTERPRISE EVENTS GROUP, INC.

LATHROP GPM LLP
ATTORNEYS AT LAW

82371188v5

- 16 -                                                                                        COMPLAINT